**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BRYAN SANSHUCK,** *et al.***,** | : | **Case No.  1:08-CV-2318** |
| **Plaintiffs,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| **HERBERTO MELENDEZ GUZMAN,** *et al.***,** | : | **MEMORANDUM AND ORDER** |
| **Defendants.** | : | |

Pending before the Court is a Motion for Default Judgment against Defendant Electronic Payment Services ("EPS").  (Doc. 39.)  For the reasons explained below, this Motion is **GRANTED IN PART**.

## I.  PROCEDURAL HISTORY

On September 30, 2008, the Plaintiffs filed a Complaint against Heriberto Melendez Guzman ("Guzman"), Electronic Payment Services Corp. ("EPS"), FBS Commerciales, Inc. ("FBS"), Edith Davila DeJesus ("DeJesus"), Daniel Cacho ("Cacho"), Francisco J. Feliciano ("Feliciano"), Caballero & Bernier ("C&B"), and Ortiz, Rivera & Rivera Company ("OR&R").  (Doc. 1.)

On November 6, 2009, after what the Plaintiffs have represented as repeated unsuccessful attempts at service by the Plaintiffs themselves, the United States Marshal for the District of Puerto Rico executed service of process upon EPS.  (Doc. 34.)

EPS did not respond with an Answer or other motion, and, on June 9, 2010, the Plaintiffs filed this Motion for Default Judgment.  (Doc. 39.)  On July 9, 2010, the Court held a hearing on this motion.

## II. DISCUSSION

There is little question that the Plaintiffs are entitled to Default Judgment against EPS. The question, however, is what that Judgment should be. In particular, while the Plaintiffs seek attorneys fees, tort damages, and contract damages, the Plaintiffs have only demonstrated their right to recover damages for breach of contract and, in fact, have not presented evidence that would allow the Court to award the full measure of damages that the Plaintiffs seek even for this.[1]

### A. Attorneys' Fees and Tort Claims

While the Plaintiffs have requested attorneys' fees, they do not provide any basis upon which this Court could award them. Fundamentally:

> The taxation of actual attorneys' fees as costs in federal courts is an extraordinary remedy, allowed normally only where Congress has expressly created an exception to the "American rule" and authorized them in the substantive statutory right at issue in the litigation. Awarding attorneys' fees is not merely a matter of procedural or judicial efficiency, and authority to do so will rarely be found in the inherent powers of the district courts.

*Tiedel v. Northwestern Michigan College*, 865 F.2d 88, 93 (6th Cir. 1988). When presented with this standard by the Court during the July 12, 2010 hearing, the Plaintiffs failed to articulate a factual basis for this "extraordinary remedy," nor did they assert any contractual basis to recover such fees.

Similarly, while the Plaintiffs seek damages in tort, the Plaintiffs do not actually allege that EPS committed any torts. Instead, as discussed in more detail during the July 12, 2010 hearing, the Plaintiffs have only alleged that EPS did not intend to honor its contractual obligations. Yet, "[i]t is not a tort to breach a contract, no matter how willful or malicious the breach." *Dottore v. Nat'l Staffing Servs. LLC*, Case No. 3:06cv1942, 2010 U.S. Dist. LEXIS 51394 (N.D. Ohio May 25, 2010) (quoting *Salvation Army v. Blue Cross & Blue Shield of N. Ohio*, 636 N.E.2d 399 (Ohio 1993)). To be sure, plaintiffs may

---

[1] The Plaintiffs' Complaint also includes claims for Unjust Enrichment and Promissory Estoppel as alternative bases of recovery for the Plaintiffs' contract claims, although the Plaintiffs did not raise either of these theories during the July 9, 2010 hearing.

sometimes allege torts that are related to, but independent of, claims for damages in contract, but these plaintiffs have not done so against EPS.

### B.  Claims for Breach of Contract[2]

#### 1.  Plaintiff Daniel J. McCue

Plaintiff Daniel J. McCue alleges that he is entitled to repayment of a loan that he made to EPS. In support of this contention, McCue has attached a copy of this loan agreement.  (Doc. 43-1.)  This document indicates that he agreed to loan EPS one-hundred thousand dollars ($100,000).  (*See id.*)  The agreement does contain a blank in the place that would indicate the interest rate on the loan, but McCue has attached a declaration under oath indicating that the interest rate was five percent (5%) per year and that he is thus owed an additional $10,000 as of July 9, 2010.  (Doc. 43.)  During the July 9, 2010 hearing, McCue also presented testimony from the individual who signed the loan on behalf of EPS, who acknowledged this 5% interest rate.[3]  McCue, then, has established the right to recover one-hundred and ten thousand dollars ($110,000) from EPS, plus the statutory rate of interest to run from the date of this order.

---

[2] As indicated during the July 9, 2010 hearing, had EPS appeared in this case, the Statute of Frauds might have presented something of a problem for some portion of the Plaintiffs' claims.  *See* O.R.C. § 1335.05.  The Statute of Frauds, however, is inapplicable when a defendant is in default because it is an affirmative defense which is waived if not raised as a defense in the pleadings.  *TCP Indus., Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 547 (6th Cir. 1981); Fed.R.Civ.P. 8(c).  In any event, the Plaintiffs might have been able to prevail against EPS even if the Statute of Frauds had been raised because the Statute of Frauds would not have precluded Plaintiffs' alternative claims for unjust enrichment and promissory estoppel.  *See Niemi v. NHK Spring Co.*, 543 F.3d 294, 305 (6th Cir. 2008); *Mvb Mortg. Corp. v. FDIC*, Case No. 2:08cv771, 2010 U.S. Dist. LEXIS 15385, at *7 (S.D. Ohio Feb. 19, 2010).

[3] That individual, Bryan Sanshuck, is also a plaintiff in this action.

### 2.  Plaintiff Joel F. Sacco

Plaintiff Joel F. Sacco makes a claim similar to McCue's.  Sacco, however, loaned EPS ten-thousand dollars ($10,000) and did not have a written loan agreement, although he did produce a canceled check made out to EPS.  (Doc. 44-1.)  Sacco has provided a declaration under oath, however, attesting that this $10,000 was a loan with an interest rate of five percent (5%) per year and he is thus owed an additional $1,000 as of July 9, 2010.  Like McCue, during the July 9, 2010 hearing, Sacco presented testimony from Bryan Sanshuck, who negotiated the loan on behalf of EPS.  Sanshuck acknowledged the loan and the 5% rate of interest.  Accordingly, Sacco has established the right to recover eleven thousand dollars ($11,000) from EPS, plus the statutory rate of interest to run from the date of this order.

### 3.  Plaintiff Bryan Sanshuck

Plaintiff Sanshuck's claims are somewhat more expansive than McCue's and Sacco's.  First, like McCue and Sacco, Sanshuck asserts that he loaned EPS money, in his case, forty-four thousand dollars ($44,000).  Sanshuck does not have a contract or even a canceled check, but he has submitted a sworn declaration attesting to this loan, and provided live testimony on July 9, 2010 confirming this loan and that it was provided at the same 5% rate of interest as the McCue and Sacco loans.[4]  In other words, Sanshuck has established the right to recover forty-eight thousand dollars ($48,000) from EPS, plus the statutory rate of interest to run from the date of this order.

Second, Sanshuck alleges that EPS owes him eight-thousand nine-hundred sixty-one dollars and nine cents ($8961.09) for unreimbursed expenses that he incurred on their behalf.  In support of this

---

[4] Although the Court understands that it is sometimes impossible to produce documentary evidence in the absence of discovery and, indeed, has no reason to doubt the veracity of Sanshuck's testimony that he believed he could do business with a "handshake," the Court is troubled that Sanshuck did not produce a canceled check or copy of a bank statement and that Sanshuck's sworn declaration did not make mention of any interest rate.  Be that as it may, EPS has elected not to enter an appearance and contest his claims.

4

assertion, he has attached what he refers to as an "itemized expense list." (Doc. 45-1.)  This exhibit is not without its problems, it is impossible to tell, for example, what Sanshuck purchased with much of the money he now claims to be owed.  Again, however, because EPS has elected not to enter an appearance and contest his claims, Sanshuck's sworn declaration is enough to establish that he has a right to recover $8961.09 from EPS, plus the statutory rate of interest to run from the date of this order.

Third, Sanshuck alleges that he is owed one-hundred and thirty-two thousand dollars ($132,000) in unpaid salary for work that he performed on behalf of EPS.  (*See* Doc. 45.)  While no written instruments memorialize the terms of Sanshuck's employment agreement, as before, his sworn declaration is sufficient to establish a right to recovery.  Sanshuck is thus entitled to $132,000 from EPS, plus the statutory rate of interest to run from the date of this order.

Finally, Sanshuck alleges that he is entitled to salary for the time *after* he stopped performing work for EPS because he was promised lifetime employment.  This, the Court cannot award. Sanshuck's own testimony on July 9, 2010 did not establish an offer and acceptance of lifetime employment; Sanshuck simply referred to broad, sweeping, statements regarding his future involvement with EPS that were akin to puffery.  Consistent with his testimony, Sanshuck provided an e-mail, entered as Plaintiffs' Exhibit 1 during the July 9, 2010 hearing, in which he says ". . . . I don't plan on leaving, I plan on . . . retiring with you guys . . . ."  A representative from EPS responded: "Love U too. Understand that U have Become [sic] part of our company.  Whether we go or not go public U always have a position and participation of our company."  This does not establish a lifetime employment contract, indeed, "[c]ourts have consistently held that similar statements are insufficient to alter an employee's at-will status."  *Micek v. Flightsafety Int'l, Inc.*, Case No. 2:03-cv-1015, 2006 U.S. Dist. LEXIS 101, at *24 (S.D. Ohio Jan. 4, 2006) (collecting cases); *see also Counts v. Kraton Polymers, U.S. L.L.C.*, 260 Fed. Appx. 825, 829 (6th Cir. 2008) ("[These] oral promises of lifetime employment many years prior to his discharge [are] 'of such general and vague nature that they can hardly be said to be

5

clear and unambiguous promises upon which Counts could reasonably rely.'" (quoting the district court)); *accord Phillips v. Consolidation Coal Co.*, Case No. 97-2180, 1998 U.S. App. LEXIS 18192 (4th Cir. W. Va. Aug. 6, 1998) ("Lifetime employment contracts are extraordinary and . . . an offer for lifetime employment must be expressed in clear and unequivocal terms before a court will conclude that an employer intended to enter into such a weighty obligation." (quoting *Williamson v. Sharvest Management Co.* 415 S.E.2d 271, 274 (W. Va. 1992)).).[5]

### III. CONCLUSION

For the aforementioned reasons, Plaintiffs' Motion for Default Judgment (Doc. 39) is **GRANTED IN PART**.  The Court now enters a **JUDGMENT** against EPS in the amount of three-hundred and one thousand dollars ($301,000), plus the statutory rate of interest to run from the date of this order.

**IT IS SO ORDERED.**

s/Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: July 19, 2010**

---

[5] Sanshuck did not appear to assert a right to recovery under the theory of promissory estoppel during default proceedings,  and such an argument would not have been well-taken in any event – the problem here is not the lack of a written instrument, as explained above, the Statute of Frauds is an affirmative defense that is waived if not raised, but Sanshuck's failure to show, through documentary evidence or testimony, that EPS ever truly offered him lifetime employment.